IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

HANOVER INSURANCE COMPANY
and MASSACHUSETTS BAY
INSURANCE COMPANY,

        *Plaintiffs,*

vs.

        Case No. 12-2196-EFM

ROBERT JONES, *et al.*,

        *Defendants.*

**MEMORANDUM AND ORDER**

This matter is before the Court on Plaintiff Hanover Insurance Company ("Hanover") and Plaintiff Massachusetts Bay Insurance Company's ("Massachusetts Bay") Motion for Summary Judgment (Doc. 24). Plaintiffs seek a declaratory judgment stating that the Commercial General Liability Policy and the Business Auto Policy issued to Professional Moving & Storage do not provide Defendants Robert Jones and Doug Havlik liability coverage for the death of Frederick Simmons. Plaintiffs ask the Court to find that they do not have a duty to defend or indemnify Jones and Havlik in a lawsuit alleging wrongful death of Simmons. The Court grants Plaintiffs' Motion for Summary Judgment because exclusions in the Commercial General Liability Policy and the Business Auto Policy preclude liability coverage for Simmons' death, and consequently,

Plaintiffs do not have a duty to defend or indemnify Jones or Havlik in a lawsuit alleging wrongful death of Simmons.

## I. Factual and Procedural Background[1]

Professional Moving & Storage, Inc. ("PMS") is a Kansas corporation with its principal place of business in Lawrence, Kansas. Defendant Robert Jones is the President of PMS, and Defendant Doug Havlik is the General Manager of PMS (collectively "Defendants"). Jones and Havlik are residents of Kansas. Both Hanover and Massachusetts Bay are stock fire and casualty insurance companies organized and existing under the laws of New Hampshire with principal places of business in Massachusetts (collectively "Plaintiffs").

This cause of action arises out of a dispute over insurance liability coverage for the death of Frederick Simmons ("Simmons"), an employee of PMS. On July 21, 2011, Simmons was fatally injured while loading furniture and belongings into a PMS moving truck. Simmons' minor daughter L.S. received workers' compensation benefits for her father's death. Bianca Ortiz, mother and Conservator for L.S., subsequently demanded that Hanover and Massachusetts Bay pay out for the death of Simmons under policies issued to PMS.

Hanover issued a Commercial General Liability Policy ("CGL Policy") to PMS with an effective date from February 28, 2011, through February 28, 2012. The CGL Policy contains a $1,000,000 liability limit and a $5,000 medical payments limit and includes liability coverage for

---

[1] In accordance with summary judgment procedures, the Court has set forth the uncontroverted facts, and they are related in the light most favorable to the non-moving party.

bodily injury and property damage liability. The Coverage A Bodily Injury and Property Damage Liability ("Coverage A") provision of the insuring agreement states:

> We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result.

Coverage A contains exclusions to the bodily injury and property damage liability coverage. The CGL Policy also provides medical payments coverage. The Medical Payments provision states that Hanover will pay medical expenses for "'bodily injury' caused by an accident'" and also contains exclusions to coverage. The Coverage A exclusions and the Medical Payments exclusions will be discussed in greater detail in the Analysis Section.

Massachusetts Bay issued a Business Auto Policy ("Auto Policy") to PMS with an effective date from February 28, 2011, through February 28, 2012. The Auto Policy contains a $1,000,000 liability limit and a $5,000 medical payments limit. The Auto Policy provides liability coverage for bodily injury and property damage, stating:

> We will pay all sums an "insured" legally must pay as damages because of "bodily injury" or "property damage" to which this insurance applies, caused by an "accident" and resulting from the ownership, maintenance or use of a covered "auto".
> . . .
>
> We have the right and duty to defend any "insured" against a "suit" asking for such damages . . . . However, we have no duty to defend any "insured" against a "suit" seeking damages for "bodily injury" or "property damage" . . . to which this insurance does not apply.

The Auto Policy also provides medical payments coverage for "reasonable expenses incurred for necessary medical and funeral services to or for an 'insured' who sustains 'bodily injury' caused by 'accident.'" The Policy contains exclusions to bodily injury and property damage coverage

and medical payments coverage, which will be discussed in greater detail in the Analysis Section.

After Hanover and Massachusetts Bay refused to pay out under the policies, Ortiz, on behalf of L.S., and Simmons' mother Antoinette Alexander filed a wrongful death lawsuit against Jones and Havlik in Douglas County, Kansas ("underlying lawsuit").[2] Hanover and Massachusetts Bay assumed the defense of Jones and Havlik in the underlying suit but preserved a full reservation of rights. In the underlying lawsuit, Ortiz and Alexander allege Simmons sustained fatal injuries while in the course and scope of his employment with PMS. According to the petition, Simmons was in the process of moving a PMS customer's belongings from her residence in Kansas City, Missouri, when the PMS truck's parking brake failed and the truck began to roll down a hill. Simmons chased after the rolling truck and was unable to open the driver's side door. Simmons then reached through the driver's side window and attempted to steer the truck until the truck struck a curb and street light pole causing Simmons to fall from the truck. The truck rolled over Simmons, and Simmons suffered fatal injuries.

Ortiz and Alexander contend that Missouri law governs the wrongful death claim because Simmons' injuries occurred in Missouri. Count I of the petition asserts that Jones, as President of PMS, and Havlik, as Simmons' supervisor, owed Simmons a personal duty of care. The petition alleges that Jones and Havlik breached this duty of care by failing to properly maintain the truck, including failing to ensure that the truck had a working parking brake and an operable driver's side door handle. Although Missouri's Workers' Compensation Act is the exclusive remedy against employers for injuries covered by its provisions, the petition alleges that the

---

[2] *See L.S. v. Jones*, No. 2011CV706 (7th Judicial District (Douglas County), Kan. Dist. Ct. filed Dec. 5, 2011), Doc. 1-1 (underlying lawsuit).

claim is permitted because the affirmative negligent acts were "something more" than simply failing to provide a reasonably safe workplace.³ Count II of the petition asserts an ordinary negligence claim against Jones and Havlik based on their alleged failure to properly maintain the truck, and Count III alleges negligence against Timothy Copp, a commercial motor vehicle inspector.⁴

Hanover and Massachusetts Bay initiated this declaratory judgment action asking the Court to find that the CGL Policy and the Auto Policy do not provide liability coverage for Simmons' death and that they do not have a duty to defend or indemnify Jones and Havlik for any of the claims in the underlying lawsuit. Hanover and Massachusetts Bay filed a Motion for Summary Judgment (Doc. 25-1). The matter is fully briefed, and the Court is now prepared to rule.

## II. Legal Standard

Summary judgment is appropriate if the moving party demonstrates that there is no genuine issue as to any material fact, and the movant is entitled to judgment as a matter of law.⁵ A fact is "material" when it is essential to the claim, and issues of fact are "genuine" if the proffered evidence permits a reasonable jury to decide the issue in either party's favor.⁶ The movant bears the initial burden of proof and must show the lack of evidence on an essential

---

³ *See* Mo. Rev. Stat. § 287.120.1 (2012) (exclusive remedy provision); *Hansen v. Ritter*, 375 S.W.3d 201, 206–07 (Mo. Ct. App. 2012) (discussing exclusive remedy provision of Missouri's Workers' Compensation Act).

⁴ The underlying suit originally included PMS as a defendant, but plaintiffs have dismissed the claim against PMS.

⁵ Fed. R. Civ. P. 56(c).

⁶ *Haynes v. Level 3 Commc'ns, LLC*, 456 F.3d 1215, 1219 (10th Cir. 2006).

element of the claim.⁷ If the movant carries this initial burden, the nonmovant that bears the burden of persuasion at trial may not simply rest upon its pleadings; the burden shifts to the nonmovant to go beyond the pleadings and "set forth specific facts" that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant.⁸ These facts must be clearly identified through affidavits, deposition transcripts, or incorporated exhibits.⁹ Finally, summary judgment is not a "disfavored procedural shortcut," but is instead an important procedure "designed to secure the just, speedy and inexpensive determination of every action."¹⁰

In a diversity case, a federal court "applies federal procedural law and the substantive law that would be applied by the forum state."¹¹ Here, Kansas is the forum state. Under Kansas choice-of-law rules, the contract law of the state where the insurance contract was entered into controls.¹² Both parties agree that Kansas is the place of contracting and that Kansas law governs whether there is coverage under the insurance policies for Simmons' death and whether Plaintiffs have a duty to defend or indemnify Jones and Havlik in the underlying lawsuit.¹³

---

⁷ *Thom v. Bristol–Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2003) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986)).

⁸ *Id.* (citing Fed. R. Civ. P. 56(e)).

⁹ *Mitchell v. City of Moore, Okla.*, 218 F.3d 1190, 1197 (10th Cir. 2000) (citing *Adler v. Wal–Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998)).

¹⁰ *Celotex*, 477 U.S. at 327 (quoting Fed. R. Civ. P. 1).

¹¹ *Evans v. Orion Ethanol, Inc.*, 2011 WL 2516929, at *1 (D. Kan. June 23, 2011) (citing *Burnham v. Humphrey Hospitality REIT Trust, Inc.*, 403 F.3d 709, 712 (10th Cir. 2005)).

¹² *Moses v. Halstead*, 581 F.3d 1248, 1252 (10th Cir. 2009) (citing *Layne Christensen Co. v. Zurich Canada*, 142, 38 P.3d 757, 766–67 (Kan. Ct. App. 2002)).

¹³ *See Layne Christensen*, 38 P.3d at 767 (noting that an insurance contract is made where the policy is delivered).

### III. Analysis

Plaintiffs argue that Hanover does not have a duty to defend or indemnify Havlik because Havlik does not qualify as an insured under the CGL Policy. Plaintiffs also argue that exclusions under the CGL Policy and the Auto Policy preclude liability coverage for Simmons' death and that Plaintiffs only have a duty to defend or indemnify Jones and Havlik if there is liability coverage for Simmons' death.

Defendants argue that the policy exclusions are not applicable because they do not take into account Missouri's "something more" doctrine. In Missouri, the Workers' Compensation Act ("Act") is the exclusive remedy against employers for injuries covered by its provisions.[14] An employer's immunity under the Act is extended to employees of the exempt employer so that "[s]uits against employees personally for breach of the duty to maintain a safe working environment are preempted by the worker's compensation remedy."[15] However, an employee may sue a co-employee "for affirmative negligent acts outside the scope of an employer's responsibility to provide a safe workplace."[16] Missouri courts refer to the imposition of co-employee liability for these "affirmative negligent acts" as the "something more" doctrine.[17] Defendants contend that more discovery is necessary to determine how to deal with the "something more" doctrine and the unique facts of this case.

---

[14] *Hansen v. Ritter*, 375 S.W.3d 201, 206–07 (Mo. Ct. App. 2012) (discussing exclusive remedy provision of Missouri's Workers' Compensation Act); *see* Mo. Rev. Stat. § 287.120.1 (2012) (exclusive remedy provision).

[15] *Burns v. Smith*, 214 S.W.3d 335, 337–38 (Mo. 2007) (internal quotation marks omitted).

[16] *Id*. at 338.

[17] *Id.* Section 287.120.1 originally did not explicitly extend immunity under the Act to employees. *Burns*, 214 S.W.3d at 337. The current version of Section 287.120.1 now extends immunity to co-employees "except that an employee shall not be released from liability for injury or death if the employee engaged in an affirmative negligent act that purposefully and dangerously caused or increased the risk of injury." Mo. Rev. Stat. § 287.120.1 (2012).

Because Kansas law governs the interpretation of the CGL Policy and Auto Policy, the Court looks to Kansas' rules for interpretation of contracts. The Kansas Court of Appeals has succinctly summarized the rules governing the interpretation of insurance contracts:

> In general, exceptions, limitations, and exclusions to insurance policies are to be narrowly construed. The insurer assumes the duty to define limitations to coverage in clear and explicit terms. To restrict or limit coverage, the insurer must use clear and unambiguous language; otherwise, the insurance policy must be construed in favor of the insured. If the language in an insurance policy is clear and unambiguous, it must be construed in its plain and ordinary sense and according to the sense and meaning of the terms used.
>
> An insurance policy is ambiguous if it contains language of doubtful or conflicting meaning based on a reasonable construction of the policy's language. Contract language is not ambiguous simply because the parties disagree on the interpretation of the language. To determine whether the language of a contract is ambiguous, the court must not consider what the insurer intends the language to mean, but must view the language in terms of what a reasonably prudent insured would understand the language to mean. If contract language is ambiguous, the contract must be construed against the drafter.[18]

**A.      Hanover's CGL Policy**

The CGL Policy provides that Hanover will "pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies." Hanover does not have a duty to defend the insured "against any 'suit' seeking damages for 'bodily injury' or 'property damage' to which this insurance does not apply." Executive officers are "insureds" under the Policy but only with respect to their duties as PMS' officers. Thus, Hanover only has a duty to defend Jones and Havlik if there is liability coverage for Simmons' death under the Policy.

Plaintiffs argue that Hanover does not have a duty to defend or indemnify Havlik because he does not qualify as an insured under the CGL Policy. Defendants contend Havlik qualifies as

---

[18] *Rodriguez ex rel. Rodriguez v. Unified Sch. Dist. 500*, 306 P.3d 327, 330-31 (Kan. Ct. App. 2013) (citing *Marshall v. Kansas Med. Mut. Ins. Co.*, 73 P.3d 120, 130 (Kan. 2003).

an insured. Although the parties disagree as to Havlik's status under the contract, Plaintiffs acknowledge that Jones qualifies as an insured and that Hanover has a duty to defend Jones in the underlying lawsuit unless liability coverage for Simmons' death is excluded under the CGL Policy. Accordingly, the Court first will address whether liability coverage for Simmons' death is precluded under the Policy.

Plaintiffs argue that liability coverage for Simmons' death is precluded under several exclusions contained in the CGL Policy's Coverage A Bodily Injury and Property Damage Liability provision ("Coverage A exclusions"). The exclusions Plaintiffs claim bar liability coverage are (1) the Workers' Compensation Exclusion, (2) the Auto Exclusion, and (3) the Employer's Liability Exclusion. Finally, Plaintiffs argue that medical payments coverage is precluded because there is no liability coverage for Simmons' bodily injury under the policy.

*1.     Workers' Compensation Exclusion*

Plaintiffs argue that the CGL Policy does not provide liability coverage for Simmons' death because of the Workers' Compensation Exclusion. The Workers' Compensation Exclusion states that liability coverage does not apply to "[a]ny obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law." Plaintiffs argue the Exclusion applies because L.S. received workers' compensation benefits for the death of Simmons. Plaintiffs further argue that the purpose of a commercial general liability policy is to provide an employer liability protection in suits involving injured third parties and is not intended to provide liability protection in suits involving injured employees. Plaintiffs cite several cases in which a workers' compensation exclusion similar to the one used in the CGL Policy has been upheld, but Plaintiffs concede neither Kansas nor the Tenth Circuit has addressed this specific exclusion.

Defendants argue that the Exclusion should not apply because PMS might be exposed to risk if Jones and Havlik are found liable in the underlying suit. Defendants note that Missouri law recognizes that an employee has an implied right to indemnity on the basis that the employee was exposed to liability on account of the employer's negligence. Because there is a possibility that PMS would have to indemnify Jones and Havlik, Defendants argue Hanover should defend Jones and Havlik because Hanover has a duty to protect PMS from undue risk. The extent of Hanover's duty to defend PMS is defined by the terms of the Policy, including the exclusions. Thus, it appears Defendants' argument is addressing liability issues an employer should take into consideration when purchasing insurance rather than whether the Exclusion should apply.

Because Kansas courts and the Tenth Circuit have not specifically addressed this issue, the Court looks to decisions in other jurisdictions for guidance. In *Oppenheim v. Reliance Insurance. Co.*,[19] a federal district court in Florida specifically addressed the issue of liability coverage for an executive officer who was sued by an employee who had received workers' compensation. In *Oppenheim*, Robert Oppenheim was injured while working under Dale Martin's supervision. Martin was the sole officer, director, president, and shareholder of Dal Mar. Oppenheim received workers' compensation for his injury but was not able to sue Dal Mar because of the exclusive remedy provision in Florida's Workers' Compensation statute. Oppenheim was able to sue Martin because the exclusive remedy provision did not apply to Martin if Oppenheim could show Martin acted with willful and wanton disregard, unprovoked physical aggression, or gross negligence that resulted in injury to Oppenheim.[20]

---

[19] 804 F. Supp. 305 (M.D. Fla. 1991).

[20] *Id.* at 307.

Dal Mar had a commercial general liability policy. The insurance company denied liability coverage for Martin because the policy excluded liability coverage for "any obligation for which the Insured or any company as its insurer may be held liable under . . . workers' compensation . . . benefits law."[21] Martin assigned Oppenheim any claims Martin might have had against the insurance company arising out of the denial of liability coverage. Oppenheim then sued the insurance company and argued that the insurance company wrongly denied Martin's claim for liability coverage.

The Court in *Oppenheim* examined the policy implications of allowing Oppenheim to recover from workers' compensation and Dal Mar's insurance company. The Court noted that workers' compensation covers suits by an employer's employee while general liability policies cover suits by injured third parties. The Court found that allowing Oppenheim to recover under workers' compensation and Dal Mar's insurance plan most likely would result in an increase in insurance premiums across the country.[22] The Court concluded that because Oppenheim recovered workers' compensation from Dal Mar, the workers' compensation exclusion prevented Oppenheim from using the suit against Martin as a way to receive compensation again from Dal Mar.

The Court finds the reasoning in *Oppenheimer* to be persuasive. The CGL Policy is designed to protect PMS from liability for injuries to third parties and is not designed to protect PMS for lawsuits by employees. The Court concludes that because the Workers' Compensation Act covers Simmons' death, the Workers' Compensation Exclusion applies and the CGL Policy does not provide liability coverage for Jones and Havlik in suits seeking damages for Simmons'

---

[21] *Id.* at 308.

[22] *Id.* at 307.

death. The Court recognizes that other arguments could impact its analysis of the Workers' Compensation Exclusion, but the Court has restricted its analysis of the Exclusion to the arguments made by the parties.

*2.  Auto Exclusion*

Plaintiffs next argue that coverage for Simmons' bodily injury is precluded under the CGL Policy because of the Auto Exclusion. The Auto Exclusion states that the insurance does not apply to:

> "Bodily injury" or "property damage" arising out of the ownership, maintenance, or use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading and unloading".
>
> This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft that is owned or operated by or rented or loaned to any insured.[23]

Plaintiffs argue that the Auto Exclusion applies in this case because the claims in the underlying lawsuit are premised on the allegation that Jones and Havlik failed to properly maintain the truck. Plaintiffs also argue that the Auto Exclusion applies even if the underlying lawsuit is based on Jones's and Havlik's failure to properly supervise those in charge of maintaining the truck.

Defendants concede that courts have typically enforced this type of Auto Exclusion. Defendants nevertheless maintain that summary judgment is not appropriate because additional discovery is necessary to determine how to deal with the claims in the underlying suit. Defendants, however, fail to explain how additional discovery could make the Auto Exclusion

---

[23] *Id.*

inapplicable in this case. Defendants also fail to argue how any of the terms in the Auto Exclusion are ambiguous. Based on a plain reading of the Auto Exclusion, the Court concludes that the Auto Exclusion precludes liability coverage for Simmons' death.

Because the Court finds that liability coverage for Simmons' death is precluded under the Workers' Compensation Exclusion and the Auto Exclusion, the Court will not reach whether coverage is also precluded under the Employer's Liability Exclusion.

3.  *Medical Payments Coverage*

Finally, Plaintiffs argue that medical payments coverage is excluded under the CGL Policy. The CGL Policy states there is no coverage for medical expenses for bodily injury "[e]xcluded under Coverage A." Plaintiffs argue that medical payments coverage is excluded because liability coverage for Simmons' bodily injury is excluded under Coverage A Bodily Injury and Property Damage Liability exclusions. Defendants argue that medical payments coverage is not barred because the Coverage A exclusions do not apply.

The Workers' Compensation Exclusion and the Auto Exclusion are both exclusions under Coverage A. Because the Exclusions prevent liability coverage for Simmons death, medical payments coverage is also excluded. Accordingly, Hanover does not have a duty to defend or indemnify Jones and Havlik in the underlying suit because liability coverage and medical payments coverage is precluded for Simmons' death under the CGL Policy. The Court will not reach whether Havlik qualifies as an insured under the Policy because Hanover does not have a duty to defend Havlik even if Havlik qualifies as an insured.

**B.    Massachusetts Bay's Auto Policy**

Plaintiffs argue that there is no coverage under the Auto Policy for Simmons' death because of (1) the Workers' Compensation Exclusion and (2) the Employee Indemnification and

Employer's Liability Exclusion. Plaintiffs argue that medical payments coverage is also excluded. Defendants again argue that the exclusions should not apply in this case because they do not specifically contemplate Missouri's "something more" doctrine.

*1. Workers' Compensation Exclusion*

Plaintiffs argue that liability coverage under the Auto Policy is excluded because PMS paid worker's compensation benefits for Simmons' death. Similar to the Hanover CGL Policy, the Workers' Compensation Exclusion in the Massachusetts Bay Auto Policy states that liability coverage does not apply to "any obligation for which the 'insured' or the 'insured's' insurer may be held liable under any workers' compensation, disability benefits or unemployment compensation law or any similar law." Plaintiffs incorporate the arguments they made in the discussion of the CGL Policy's Workers' Compensation Exclusion. Plaintiffs argue that because L.S. received workers' compensation benefits for the death of Simmons, the Exclusion applies and liability coverage is excluded. Defendants also incorporate by reference arguments they made regarding the CGL Policy's Workers' Compensation Exclusion and do not provide additional reasons as to why the Exclusion should not be applied under the Auto Policy.

For the reasons stated in the Court's discussion of the Workers' Compensation Exclusion in the CGL Policy, the Court concludes that the Auto Policy's Worker's Compensation Exclusion applies in this case. Again, the Court's holding regarding the applicability of the Auto Policy's Workers' Compensation Exclusion is limited because the Court's analysis of the Exclusion is based on arguments raised by the parties. Because the Court finds that coverage under the Auto Policy is excluded under the Workers' Compensation Exclusion, the Court will not reach whether coverage is also excluded under the Employee Indemnification and Employer's Liability Exclusion.

## 2. *Medical Payments Coverage*

Plaintiffs argue coverage for Simmons' medical expenses is excluded under the Auto Policy. The Medical Payments Coverage provision of the Auto Policy provides that there is coverage for "reasonable expenses incurred for necessary medical and funeral services to or for an 'insured' who sustains 'bodily injury' cause by 'accident.'"[24] The policy excludes medical payments coverage for bodily injury to the insured's "'employee' arising out of and in the course of employment by [the insured]."[25] Plaintiffs note that Simmons was an employee of PMS and that Simmons' bodily injury occurred during the course of his employment by the insured. Defendants maintain that medical payments coverage is not excluded under the Auto Policy but fail to provide a substantive argument for why the Exclusion does not apply. Based upon a plain reading of the Exclusion, the Court finds that medical payments coverage for Simmons' death is excluded under the Auto Policy.

Because liability and medical payments coverage are precluded for Simmons' death under the Auto Policy, the Court finds that Massachusetts Bay does not have a duty to defend or indemnify Jones and Havlik in the underlying suit.

## C. Costs and Attorney's Fees

Plaintiffs contend that if they prevail on their Motion for Summary Judgment, they are entitled to their costs and attorney's fees accrued. Fed. R. Civ. P. 54(d)(1) provides that "[u]nless a federal statute, these rules, or a court order provides otherwise, costs—other than attorney's fees—should be allowed to the prevailing party." Whether to award costs is within the sound discretion of the district court, but this discretion is limited in two ways. First, "it is

---

[24] Stipulated Facts, Doc. 26, at 15.

[25] *Id.*

well established that Rule 54 creates a presumption that the district court will award costs to the prevailing party." Second, "the district court must provide a valid reason for not awarding costs." Given the strong presumption in favor of awarding costs to the prevailing party and Defendants' failure to argue why costs should not be awarded, the Court directs Plaintiffs to submit a bill for costs pursuant to D. Kan. Rule 54.1. The Court denies Plaintiffs' request for attorney's fees because Plaintiffs have failed to cite the statute, rule, or other grounds entitling Plaintiffs to an award of attorney's fees.[26]

**IT IS ACCORDINGLY ORDERED** this 28th day of October, 2013, that Plaintiffs' Motion for Summary Judgment (Doc. 24) is hereby **GRANTED**.

**IT IS SO ORDERED**.

*[signature]*
ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE

---

[26] *See* Fed. R. Civ. P. 54(d)(2).